IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

        Plaintiff,

   vs.

                      No.18-20096-JTF-dkv

SILVIO LUCCHESI,

        Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
_____

On April 11, 2018, the grand jury returned an indictment against the defendant, Silvio Lucchesi aka "Trace" ("Lucchesi"), charging him with one count of "unlawfully and knowingly open[ing], leas[ing], rent[ing], us[ing], and maintain[ing] his residence at 2254 Littlemore Drive in Memphis, Tennessee, permanently and temporarily, for the purpose of distributing and using heroin, a Schedule I controlled substance" in violation of 21 U.S.C. § 856(a)(1). (Indictment, ECF No. 1.) Now before the court is Lucchesi's February 20, 2019 motion to suppress evidence of "any and all statements, property or other tangible objects" seized by Memphis Police Department ("MPD") officers from Lucchesi's person or within his residence at 2254 Littlemore Drive on or about December 13, 2016. (Mot. to Suppress 1, ECF No. 38.) The government filed a response on March 4, 2019. (Gov't's Resp., ECF No. 44.) The motion was referred to the

United States Magistrate Judge for an evidentiary hearing and report and recommendation.  (ECF No. 42.)

Pursuant to the reference, the court held the evidentiary hearing over two days, on April 30, 2019 and on May 8, 2019.  At the hearing, the government called four witnesses: (1) MPD Detective Jonathan Bond ("Detective Bond"), (2) MPD Detective Timmy T. Mitchell ("Detective Mitchell"), (3) MPD Detective Charles Wren ("Detective Wren"), and (4) Charles Johnson ("Johnson").  The government also introduced six exhibits: (1) the Affidavit of Complaint as to Terrance Moore (Aff. of Compl., Ex. 1); (2) the affidavit in support of the search warrant (Aff. in Supp. of Search Warr., Ex. 2); (3) a photograph from the back of the kitchen at 2254 Littlemore Drive with Detective Bond's designation of Johnson's location (Ex. 6); (4) a photograph from the inside of the kitchen at 2254 Littlemore Drive with Detective Wren's designation of the location of the kitchen table (Ex. 7); (5) a photograph from the front door looking toward the kitchen of 2254 Littlemore Drive with Detective Wren's designation of the location of the kitchen table (Ex. 8); and (6) a photograph from the front door looking toward the kitchen on 2254 Littlemore Drive with Johnson's designation of the location of the kitchen table (Ex. 11).  Lucchesi did not call any witnesses, but introduced six exhibits: (1) a collective exhibit consisting of seven photographs of the outside and inside of the residence at

2254 Littlemore Drive (Ex. 3); (2) the arrest ticket as to Terrance Moore (Ex. 4); (3) a photograph from the back of the kitchen at 2254 Littlemore Drive (Ex. 5); (4) a hand-drawn, non-scale floorplan of the residence at 2254 Littlemore Drive[1] (Ex. 8); (5) a hand-drawn, non-scale floorplan of the residence at 2254 Littlemore Drive, with Detective Wren's designation of the officers' and Lucchesi's locations (Ex. 9); and (6) a photograph from the sunroom located just off of the kitchen looking toward the front of the house at 2254 Littlemore Drive with Johnson's designations as to the location of the kitchen table and two individuals seated at the table (Ex. 12).

After careful consideration of the statements of counsel, the testimony of witnesses, the evidentiary exhibits, and the entire record in this case, the court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

---

[1]    When asked whether this rendering of the floorplan fairly represented the layout of the house at 2254 Littlemore Drive, the witness was instructed to ignore the drawing of the kitchen table because the exact location of the kitchen table was disputed.

## I. PROPOSED FINDINGS OF FACT

The government's first witness, Detective Bond, has been an MPD detective for nine years and has been assigned to the Organized Crime Unit ("OCU") for six years. On December 13, 2016, the OCU received a complaint about drug activity occurring at 2254 Littlemore Drive. Around 9:30 pm, four officers drove in multiple vehicles to the residence to conduct surveillance: Detective Bond, Detective Mitchell, Detective Wren, and Detective Jones. Detective Bond testified that, for the purposes of identifying who may be present at the residence, one officer ran the license plate numbers of the cars in the driveway of and on the street surrounding 2254 Littlemore Drive. A Honda vehicle sitting in the driveway registered as stolen.

Detective Bond testified that, at this point, the officers on the scene decided to conduct a knock and talk in relation to the stolen vehicle, not the drug activity. Detectives Bond and Wren conducted the knock and talk, with Detectives Mitchell and Jones standing away from the door as backup. Jason Adams ("Adams"), a resident of the home, answered the door. Adams gave officers verbal consent to step inside the house. All four officers stepped into the residence while Adams looked for Lucchesi, the homeowner. Detective Bond testified that he took two to three steps in and to the left, past a small wall to the left of the front door, in order to give the other officers space

4

to enter.  From this vantage point, Detective Bond stated that he could see into the kitchen, which was toward the back, left part of the house.

Adams disappeared for between five and ten seconds to look for Lucchesi, who came into view from straight ahead of the officers, walking toward them from the back of the house. Lucchesi advised the officers that he was, in fact, the homeowner.  Within ten to fifteen seconds of stepping into the front door and while another officer was speaking to Lucchesi, Detective Bond testified that he observed drugs and scales on the kitchen table and witnessed what appeared to be two men "chopping up dope" at the table.  Detective Bond observed one of the men, Johnson, slide drugs on to the floor, in an attempt to conceal them.  Detective Bond also testified that he witnessed the other man, Terrance Moore ("Moore"), stuffing things into his pockets. At this time, Detective Bond drew his service weapon for officer safety.

On cross-examination, Detective Bond stated that the kitchen table was a large table placed near the doorway looking into the kitchen.  Detective Bond could not recall, however, whether the table was round or rectangle.  He could only recall that, although the table was behind the kitchen wall, it was visible from the angle from which he viewed it, and he could see, in plain view, that there were two men sitting at the table and

appeared to be "chopping up dope."

Thereafter, the officers detained every person in the house in order to obtain a search warrant. Upon detaining everyone in the residence, officers discovered drugs and drug paraphernalia in the house and arrested Johnson and Moore. Officers also issued a misdemeanor citation for drug paraphernalia as to Lucchesi. Detective Bond then drove Johnson downtown to be booked and processed. During the drive, Johnson informed Detective Bond that he left his wallet at the residence. Detective Bond went back to the residence to retrieve Johnson's wallet. Lucchesi let Detective Bond in the house, where Detective Bond observed a female inside who appeared to throw a small bag of drugs into the corner of the room. Detective Bond retrieved the drugs and arrested the female as well.

The government's second witness, Detective Mitchell, has been an MPD officer for 8 years, and has been assigned to the OCU as a "Drug Team Lead" since December of 2016. Detective Mitchell testified that he and other officers were investigating drug activity at 2254 Littlemore Drive on December 13, 2016. The officers conducted surveillance, and Detective Mitchell ran tags on a Honda vehicle located in the driveway, which registered as stolen. On cross-examination, Detective Mitchell testified that he ran the tags on the Honda because it had a distinct business logo on the side of it, which he recognized from a previous

search warrant.

Detective Mitchell testified that the officers collectively decided to conduct a knock and talk at 2254 Littlemore Drive regarding the stolen vehicle. Detectives Wren and Bond conducted the knock and talk while Detectives Mitchell and Johnson stayed in the driveway, roughly twenty-five feet away from the front door. Detective Mitchell testified on cross-examination that he was unsure whether Detective Wren or Detective Bond actually knocked on the door. He also testified, while the officers did not announce that they were the police, they were wearing law enforcement gear. Once a male white, later identified as Adams, opened the door and allowed the officers into the house, Detective Mitchell testified that he and Detective Johnson followed closely behind, entering 2254 Littlemore Drive as well.

Detective Mitchell testified that he stepped into the residence but could not remember how far into the residence he stepped or in which direction he stepped. While Detective Bond talked to Lucchesi, Detective Mitchell observed two men sitting at the kitchen table "chopping up dope." Detective Mitchell also testified that Lucchesi walking into view and talking to Detective Bond, as well as his observation of men at the kitchen table "chopping up dope," happened almost simultaneously, within a few seconds of each other.

Immediately upon observing the drugs, the officers detained

everyone in the residence, Detective Bond obtained a search warrant, executed it, arrested two individuals, and issued a misdemeanor citation to Lucchesi.  Detective Mitchell testified that he did not talk to anyone located in the house, but that upon entering with the other officers, he could see straight into the kitchen and saw the drugs within "a few" seconds of entering the residence.

The government's third witness, Detective Wren, has been an MPD officer for 9 years, and has been assigned to the OCU for 4 years.  Detective Wren testified that he and other officers[2] went to 2254 Littlemore Drive to investigate drug activity on the night of December 13, 2016.  He testified that three to four police cars parked in front of 2254 Littlemore Drive to conduct surveillance.  While conducting surveillance, the officers ran the tags of cars in the driveway of the residence, and a Honda vehicle came back reported as stolen.  Given this information, the officers collectively decided to conduct a knock and talk at 2254 Littlemore Drive with regard to the stolen vehicle. Detective Wren and Detective Bond conducted the knock and talk, with other officers waiting in the background.  Detective Bond knocked for roughly 15 seconds before Adams answered the door.

---

[2]

While other government witnesses stated there were four officers total – Detective Jones, Detective Mitchell, Detective Wren, Detective Bond – Detective Wren testified that there was a fifth officer present: one Detective Johnson.

Detective Wren testified that Adams gave officers verbal consent to enter the residence while he went to look for Lucchesi, the owner of the home.

Detective Wren testified that he took a few steps inside and to the right of the entrance – maybe three feet past the threshold of the front door – in order to accommodate other officers entering the home. Shortly thereafter, Lucchesi appeared from the back of the residence and spoke with Detective Wren for a brief second. Detective Wren asked Lucchesi two questions: (1) are you the owner of the home, and (2) how long have you lived here?

While talking to Lucchesi, he heard Detectives Mitchell and Bond say "what are you doing in there?" behind him. The other detectives had spotted drugs on the kitchen table and walked toward the kitchen after seeing one individual knock drugs to the ground. Detective Wren testified that he did not personally see the drugs from his point of view while he was talking to Lucchesi. Detective Wren did, however, mark the vantage point from the front door, looking toward the kitchen, with the location of the kitchen table. (Ex. 8.) Detective Wren also testified that the distance from the front door to the kitchen door was approximately 15 feet. Upon observation of the drugs, officers detained all individuals present in the residence to obtain a search warrant.

Detective Wren stated that he reviewed the arrest ticket as to Terrence Moore and believed it to be an accurate reflection of the events of December 13, 2016. (Ex. 1.) For reference, Detective Wren also marked the locations of the officers and Lucchesi inside the house on the floor plan previously entered into evidence. (Ex. 10.) Detective Wren marked that Lucchesi was in the living room, toward the back of the house. (*Id.*) Detective Wren was in the entry hall, a few steps into the house, and Detective Wren marked that Detectives Bond and Mitchell were standing behind him, closer to the front door. (*Id.*)

The government's final witness was Charles Johnson. Johnson is a former resident at 2254 Littlemore Drive and was the subject of the drug complaint that brought the officers to the residence. Johnson testified that he met Lucchesi in 2015 and lived with him at 2254 Littlemore Drive from May 2016 through September 2017, when he was arrested for selling heroin. According to Johnson, both he and Lucchesi would invite people over to buy heroin.

On December 13, 2016, Johnson and two friends had arrived at 2254 Littlemore Drive after a night at the casino in order to make sure everyone at the house was "well." According to Johnson, "well" meant that he was there to provide drugs to make sure that nobody was "dope sick." Johnson's friends, Terrence Moore and Quinten Yates, were sitting at the kitchen table with heroin and cocaine. Officers knocked on the front door and were

let inside by Adams.  According to Johnson, the officers came in without commotion and did not threaten or harm him or others in the residence in any way.  When the officers entered the house, Johnson was in the "sunroom" located just off the kitchen. According to Johnson, Yates was sitting at the table, in view of the front door, and Moore sat at the table with his back facing the front door.  He marked their locations on a photograph looking into the kitchen from the sunroom.  (Ex. 12.)  From his vantage point in the sunroom, Johnson testified that he could not see to the front door, but that Moore and Yates warned him that there were officers in the house.  Johnson stepped into the kitchen, saw four to five officers standing by the front door, grabbed the plate of drugs from the kitchen table, and attempted to slide it under the couch located in the sun room.  Johnson was unsure whether there were other drugs still remaining on the table.

Johnson testified that almost simultaneous with his attempt to hide the drugs, the officers saw the drugs, entered the kitchen area, apprehended all persons present at the residence, and secured a search warrant.  Johnson testified that the kitchen table is clearly visible from the front door and marked the location of the kitchen table on a photograph looking from the front door toward the kitchen.  (Ex. 11.)  According to Johnson, it was a round, glass table.  Upon conducting the search warrant,

11

officers found heroin, cocaine, Xanax, and methadone.

According to Johnson, he bagged up heroin and cocaine at 2254 Littlemore Drive on a daily basis, and Lucchesi saw him sell drugs on numerous occasions. Johnson also claims that he provided Lucchesi with drugs and got high with Lucchesi on numerous occasions. On cross-examination, Johnson stated that he lived in the master bedroom, had a special lock put on the door, and was the only person with a key to that lock. According to Johnson, other people would stay at the house for weeks or months at a time, although he and Lucchesi were the primary residents.

Johnson testified that he is forty-nine years old and a career offender currently residing at Federal Correctional Institution Forrest City – Medium after pleading guilty to distribution of heroin arising from the incident at 2254 Littlemore Drive on December 13, 2016. Johnson also testified that he was not promised anything in return for his testimony, although he did receive a reduced sentence in return for his guilty plea.

II.PROPOSED CONCLUSIONS OF LAW

Lucchesi asserts that his Fourth Amendment rights were violated because the officers "entered the residence without request, invitation or permission to do so" and he seeks to suppress all evidence obtained as a result of the officers' alleged unlawful entry. (Def.'s Mot. to Suppress 1, ECF No. 38.) In response, the government argues that the officers obtained valid consent to enter the residence from Adams, a resident of 2254 Littlemore Drive. (Gov't Resp. in Opp. 4-6, ECF No. 44.)

Although much of the testimony elicited over the hearing on Lucchesi's motion to suppress dealt with whether the officers could, in fact, see drugs on the kitchen table from their vantage point at the front door, this issue was not raised in, or otherwise the subject of, the motion to suppress. The motion to suppress only challenged the officers' entry into the residence at 2254 Littlemore Drive. The location of the kitchen table and what the officers actually saw upon entry into the front door challenges the truth of the officers' statements underlying the search warrant and raises an issue under *Franks v. Delaware,* 438 U.S. 154 (1978

A. Entitlement to a *Franks* Hearing

As a general rule, a court's role in reviewing the validity of a search warrant is limited to reviewing the sufficiency of the affidavit that was before the issuing judge. The Supreme

Court has held on numerous occasions that hearings are
impermissible when the defendant challenges the sufficiency of
the search warrant affidavits. In *Aguillar v. Texas*, 378 U.S.
108, 109 (1968), the Court noted "[i]t is elementary that in
passing on the validity of a warrant, the reviewing court may
consider only information brought to the magistrate's [the
issuing judge's] attention." There is, however, an exception to
this general rule created by *Franks*, 438 U.S. at 154. In *Franks*,
the Supreme Court held that a court may have a hearing in which
it considers evidence that was not before the issuing judge if
the defendant can show that the affiant made a false statement or
recklessly disregarded the truth in his affidavit. *Id.* at 155-
56. However, before such a hearing, the defendant must first
make a substantial preliminary showing that a false statement,
which was necessary to the finding of probable cause, was
knowingly or recklessly included by the affiant in the warrant
affidavit. *Id.; United States v. Elkins*, 300 F.3d 638, 349-41
(6th Cir. 2002).

Here, Lucchesi has failed to make the required preliminary
showing that Detective Bond deliberately or recklessly included
false information in his search warrant affidavit such as would
permit this court to hold a *Franks* hearing. In the hearing on
his motion to suppress, Lucchesi attempted to argue that
Detective Bond included false statements in the affidavit in

support of the search warrant because the officers could not have seen the kitchen table, and therefore any drugs, from the front door. However, Lucchesi provides no other support for his claim, such as affidavits by other individuals present at 2254 Littlemore Drive at the time. Lucchesi's argument about what the officers could reasonably have seen at the time they entered the residence, standing alone, does not meet the substantial preliminary showing requirement. In any event, multiple government witnesses testified to the contrary, including the officers involved in the knock and talk and Johnson, and testified credibly at the hearing about the information contained in Detective Bond's affidavit, including that the drugs were visible from the front door of the residence. The record demonstrates that Detective Bond did not provide any false or misleading information in his search warrant affidavit. Therefore, the court concludes that Lucchesi is not entitled to a *Franks* evidentiary hearing.

B.   The Credibility of the Witnesses

The court is given wide latitude in making its credibility determinations. *United States v. Haynes*, 301 F.3d 669, 679 (6th Cir. 2002)(citing *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-75 (1985)).  "In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *9 (E.D. Tenn. Jan. 14, 2015).  The court finds the witnesses in this case credible.  Specifically, Detectives Bond, Mitchell, and Wren testified consistently with one another.  They provided virtually identical accounts of the events surrounding the search at 2254 Littlemore Drive on December 13, 2018.  While there were a few inconsistencies in their stories, the court finds these contradictions to be minor and not material.  Moreover, Johnson's testimony was consistent with that of the detectives.  Further, Lucchesi did not call any witnesses and, therefore, the testimony of the government witnesses is not contradicted.

C.    Consent to Enter

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"  U.S. Const. amend. IV.  Warrantless searches are "'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'"  *Arizona v. Gant*, 556 U.S. 332, 338 (2009)(quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is relevant here: a warrantless entry or search of a dwelling may be conducted "with the voluntary consent of an individual possessing authority."  *Georgia v. Randolph*, 547 U.S. 103, 109 (2006).

"'[T]he Fourth Amendment has drawn a firm line at the entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.'" *United States v. Thomas*, 430 F.3d 274, 276 (6th Cir. 2005)(quoting *Payton v. New York*, 445 U.S. 573, 590 (1980)); *see also Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984)("It is axiomatic that the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.")(internal quotations omitted).  An officer receiving voluntary consent from an individual authorized to give consent needs neither a warrant nor probable cause to conduct a

constitutional search. *United States v. Jenkins*, 124 F.3d 768, 774 (6th Cir. 1996); *see also Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991)("[I]t is no doubt reasonable for the police to conduct a search once they have been permitted to do so.").

Voluntary consent is not limited to that given by the defendant. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). A third party who possesses common authority over the premises to be searched can also give valid consent to enter. *Id.* When determining whether a third party has common authority for the purposes of valid consent, courts look at whether the third party has mutual use of property, having joint access or control for most purposes. *United States v. Matlock*, 415 U.S. 164, 171, n.7 (1974).

In the present case, the government has sufficiently established that consent was freely, voluntarily, and unequivocally given by a person with authority to give consent. Johnson, a former resident of 2254 Littlemore Drive, testified that Adams was a resident of the same on December 13, 2016. Lucchesi offered no evidence to the contrary. Johnson's testimony, thus, is uncontroverted. As a resident, Adams had common authority over 2254 Littlemore Drive, such as to give him authority to consent to the entry of the detectives. *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)(holding that an "individual possessing authority" for the purposes of consenting to a search

18

may be "a fellow occupant who shares common authority over the property . . . ."); *see also*, *Matlock*, at 415 U.S. at 170 (It is "reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.").

"'[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). Relevant circumstances may include the age, intelligence, and education of the individual, whether the individual understood that she had the right to refuse consent, the use of coercive conduct by police, and whether the individual knew her constitutional rights. *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). Although a police officer is not required to inform an individual of her right to refuse consent, "the absence of such a warning is considered in the totality of the circumstances analysis." *United Sates v. Cowan*, 704 F. App'x 519, 526 (6th Cir. 2017). The burden of proving that consent was voluntary is on the government and "'must be proved by clear and positive testimony.'" *Moon*, 513 F.3d at 537 (quoting *United States v. Scott*, 578 F.2d 1186, 1188-89 (6th Cir. 1978)). "The

government's showing must satisfy the preponderance standard." *United States v. Holland*, 522 F. App'x 265, 274 (6th Cir. 2013)(citing *Worley*, 193 F.3d at 385).

Here, Lucchesi's motion to suppress does not argue that Adams's consent to enter was involuntary or coerced in some manner.  Instead, Lucchesi's motion to suppress simply argues "[a]t no point was [Lucchesi] requested to allow access, nor was access granted [to the officers]."  Therefore, little evidence was presented as to the voluntariness of Adams allowing the officers to step into the residence at 2254 Littlemore Drive. The proof was undisputed, however, that Adams allowed the officers to step into 2254 Littlemore Drive upon being asked for permission.  Detectives Bond and Wren, the officers conducting the knock and talk, both testified that Adams allowed them to enter 2254 Littlemore Drive when they asked if they could step in while Adams located Lucchesi, the homeowner.  Detective Mitchell, who was standing in the driveway, testified that Adams allowed the officers to step into the residence.  At the motion to suppress hearing, Lucchesi failed to bring forth any evidence to the contrary of the testimony of Detectives Bond, Mitchell, and Wren.  Their testimony as to Adams's consent to their entry, therefore, is uncontroverted.

D.   Plain View Exception

Having concluded that the government has carried its burden

to show consent to enter, the court can find no grounds on which
to suppress the drugs seized after their entry.  Police officers
may seize an item without a warrant under the plain view doctrine
if: (1) the item seized is in plain view, (2) the item's
incriminating character is immediately apparent, (3) the officer
is lawfully in the place from where the item can be plainly seen,
and (4) the officer has a lawful right of access to the item.
*United States v. Mathis*, 738 F.3d 719, 732 (6th Cir. 2013)(citing
*Horton v. California*, 496 U.S. 128, 136-37 (1990); *see also
United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir.
2011)("Under the plain view doctrine, if police are lawfully in a
position from which they can view an object, if its incriminating
character is immediately apparent, and if the officers have a
lawful right of access to the object, they may seize it without a
warrant.")(internal quotations omitted).   "'If an article is
already in plain view, neither its observation nor its seizure
would involve any invasion of privacy.'"  *United States v.
Barclay*, 578 F. App'x 545, 550 (6th Cir. 2014)(quoting *Horton*,
496 U.S. at 133).

    Here, based on the affidavit underlying the search warrant
and based on the testimony of all government witnesses, the
evidence is undisputed that the drugs were both in plain view and
had an immediately apparent incriminating character.  Further,
based on the proof elicited at the hearing on the motion to

suppress, the drugs were able to be seen from the entry way door to the kitchen, sitting on the kitchen table. They were not hidden or concealed in any way, and the officers' view was not obstructed in any way. All three detectives testified it appeared that the individuals were sitting at the table "chopping up dope," and Johnson testified that there was a "pile" of drugs sitting on the kitchen table. Therefore, the first and second prongs of the plain view test have been met.

Moreover, the court has already determined that the detectives were lawfully present in the home, pursuant to Adams's consent to enter 2254 Littlemore Drive. Therefore, the third prong has been met. Finally, the requirement that the officers have a lawful right of access to the item – the fourth prong – is also satisfied here. Given that the officers were lawfully present in 2254 Littlemore Drive pursuant to Adams's consent, the officers also had lawful access to the drugs on the kitchen table. Accordingly, it is recommended that the plain view exception applies here and Lucchesi is not entitled to suppression of the drugs found in the kitchen.

## I. CONCLUSION

For the reasons expressed above, it is recommended that Lucchesi's motion to suppress be denied.

Respectfully submitted this 12th day of June, 2019.

        <u>s/Diane K. Vescovo</u>
        DIANE K. VESCOVO
        CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Any objections or exceptions to this report must be filed within
fourteen (14) days after being served with a copy of the report.
28 U.S.C. § 636(b)(1)(C).  Failure to file them within fourteen
(14) days may constitute a waiver of objections, exceptions, and
any further appeal.  Any party objecting to this report must make
arrangements for a transcript of the hearing to be prepared.